UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JAMONTE JAMAR FLETCHER, *Inmate Identification No. 422-651, SID No. 308-6802*,

    Plaintiff,

v.

RICKEY FOXWELL,
DONALD GALLAGHER,
ROD ROSLAK, and
SHAWN LOWICKI,

    Defendants.

Civil Action No. TDC-18-2720

**MEMORANDUM OPINION**

Plaintiff Jamonte Jamar Fletcher, an inmate at Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that he was compelled to engage in a sexual act by Correctional Officer Shawn Lowicki and that he was subjected to unlawful retaliation after he filed a grievance relating to that incident. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Motion to Dismiss"), as well as several non-dispositive motions filed by Fletcher. Upon consideration of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be denied.

**BACKGROUND**

In his verified Complaint, Fletcher alleges that on October 11, 2017, Lowicki required all inmates in Housing Unit 4, B Tier, to undergo a strip search as a condition of participation in recreation and showers. When Fletcher was subjected to the strip search, Lowicki ordered him to

insert his finger into his own anus to demonstrate that no contraband was present. Fletcher was required to do so in the presence of his cellmate. According to Fletcher, he reported the incident to Lt. Rod Roslak immediately after it occurred. After Fletcher filed a complaint pursuant to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601-15609 (2012), a Lt. Jones came to interview him about the incident. According to Fletcher, after conducting an inquiry, Lt. Jones concluded, based on video evidence and interviews of other inmates, that he was telling the truth. A subsequent formal investigation by Lt. Pepper of the Intelligence and Investigation Division ("IID"), however, resulted in a conclusion that Fletcher's allegations had merit but that there was insufficient evidence to bring charges against Lowicki.

During March and April 2018, Lowicki harassed Fletcher by cursing at him, "giving him evil looks," threatening him, and conducting pat down searches without justification. Am. Compl. ¶ 45, ECF No. 4. On April 5, 2018, after Fletcher left his cell to go to dinner, Lowicki sent him back to his cell without dinner. When asked why, Lowicki responded by stating, "You know the fuck why," which Fletcher understood to be a reference to his PREA complaint against Lowicki. *Id.* ¶ 50. That same day, Correctional Officer Broyles conducted a search of Fletcher's cell and dropped and broke Fletcher's CD player. Fletcher asserts that he did so purposely, as retaliation for Fletcher's complaint against Lowicki. Fletcher was then given a Notice of Inmate Rule Violation written by Lowicki and was sent to lock up as a result. After a hearing, Fletcher was sentenced to 90 days in lock up and a loss of 90 days of good time credits. In the Notice of Inmate Rule Violation submitted by Fletcher, dated April 5, 2018, Lowicki accused Fletcher of not displaying his state identification card and acting in an aggressive manner when he was confronted.

In April 2018, Fletcher placed two calls to the PREA hotline because he believed his recent punishment was retaliation for his earlier PREA complaint. On April 25, 2018, Fletcher met with

2

Captain Donald Gallagher, who directed him to stop making complaints to the PREA hotline. When Fletcher complained that Lowicki should not have been assigned to an area near his cell after Fletcher's initial PREA complaint, Gallagher smiled and told Fletcher that IID had found his original claim unfounded and stated, "that means it's like the stuff never even happened." *Id.* ¶ 68.

In a declaration submitted with the Motion, Lowicki denies that he sexually assaulted Fletcher or placed his finger in Fletcher's rectum. He does not, however, address whether he ordered Fletcher to insert his finger into his rectum. In his interview with the IID, Lowicki denied ordering Fletcher or Armstrong to insert their fingers into their own rectums. During the IID investigation, Fletcher's cellmate, Demetri Armstrong corroborated Fletcher's allegation that Lowicki ordered them to insert their fingers into their rectums if they wanted to participate in recreation or showers. After investigation, Lt. Pepper of the IID concluded that Fletcher's allegations were "unfounded," IID Supp. Report at 4, Mot. Dismiss Ex. 3, ECF No. 22-2 at 7, in part because Armstrong stated that neither he nor Fletcher actually inserted their fingers inside themselves and because Rostak denied that Fletcher reported the incident to him. In a declaration submitted by Fletcher, however, another inmate in a nearby cell, Kajaun Marcelin, states that on October 11, 2017, he heard Lowicki order Fletcher to "stick his finger up his rectum." Marcelin Decl. ¶ 4, Am. Compl. Ex. 2, ECF No. 4-4.

In his declaration, Lowicki denies writing a false report against Fletcher relating to their encounter in April 2018. Defendants provide no record of a Notice of Inmate Rule Violation against Fletcher from April 2018, but they have submitted a Notice of Inmate Rule Violation from November 11, 2018 charging Fletcher with assault on a fellow prisoner and resulting in sanctions of 90 days of segregation and revocation of 120 days of good conduct credits.

# DISCUSSION

## I. Preliminary Motions

Since the filing of the Motion to Dismiss, Fletcher has filed several non-dispositive motions, including a Second Motion for Leave to File an Amended Complaint ("Second Motion to Amend"), ECF No. 27, a Motion for Inspection of Things and Places ("Motion for Inspection"), ECF No. 28, and two filings relating to a settlement offer to Defendants, ECF Nos. 24, 25. Instead of filing a memorandum in opposition to the Motion to Dismiss, Fletcher filed a "Motion for Rule 56(f) Continuance and/or in the Alternative, Motion for Extension of Time" ("Motion to Continue"), ECF No. 26, to which he has attached an affidavit pursuant to Federal Rule of Civil Procedure 56(d) asserting that discovery is required before the Motion can be resolved.

### A. Second Motion to Amend

The Second Motion to Amend was filed on March 22, 2019, after Defendants' had filed their Motion to Dismiss. Under part IV.A.3 of this Court's Case Management Order, ECF No. 3, because Fletcher has already amended his complaint once before, he may not file another Amended Complaint until after the resolution of the Motion to Dismiss. Accordingly, the Second Motion to Amend will be denied without prejudice.

### B. Motion for Inspection

The Motion for Inspection, which is properly construed as a motion seeking discovery, will be denied as premature. Under this Court's Local Rules, discovery does not commence until after a Scheduling Order has been issued. D. Md. Local R. 104.4. Such an order will not be issued until after resolution of the Motion to Dismiss.

## C. Settlement Motions

Fletcher's filings relating to settlement offers, ECF Nos. 24 and 25, in which requests that Defendants be required to pay him the amount of his settlement offers because they failed to respond to them, will be denied. Although Federal Rule of Civil Procedure 68(a) permits a party defending against a claim to serve on an opposing party an offer to allow judgment on specified terms, Fletcher is the plaintiff in this case. In the absence of any rule requiring acceptance of Fletcher's settlement offers, his request will be denied.

## D. Motion to Continue

Upon consideration of Fletcher's Motion to Continue, the Court agrees that the Motion to Dismiss should not be converted into a Motion for Summary Judgment in the absence of discovery. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must

file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).

With the Motion to Continue, Fletcher has submitted a Rule 56(d) affidavit in which he asserts that discovery is necessary before summary judgment may be considered. For example, discovery of all documents and videos relating to the October 11, 2017 incident, including any relating to an investigation of the incident by Lt. Jones, and all prison policies relating to when and how strip searches are to be conducted, would be necessary before summary judgment could be considered. Likewise, discovery relating to the April 2018 Notice of Rule Violation, including the record of the hearing on that matter, should also be produced. Thus, the Court will construe Defendants' Motion as a Motion to Dismiss only and will not consider the attachments to the Motion at this time. Because, as discussed below, the Motion will be denied, there is no need to grant Fletcher additional time to file a memorandum in opposition to the Motion.

## II. Motion to Dismiss

In their Motion, Defendants assert that Fletcher has failed to state a cause of action under PREA or 42 U.S.C. § 1983, that Fletcher has failed to allege facts supporting the claim that Defendants other than Lowicki could be liable based on their personal conduct or under a theory of supervisory liability, and that Defendants are entitled to qualified immunity.

### A. Legal Standard

As discussed above, the Court will construe the Motion as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the Complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the Complaint as a whole, consider the factual allegations in the Complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.  Sexual Assault

Defendants are corrected that there is no specific cause of action available to Fletcher under PREA. PREA authorized grant money and created a commission to study rape in prisons, but it did not create a private right of action for inmates, so any substantive claim under PREA must be dismissed. *See Williams v. Dovey*, No. 8:15-cv-1891, 2016 WL 810707 at *7 (D. Md. Mar. 2, 2016; *DeLonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) *aff'd sub nom, DeLonta v. Pruitt*, 548 F. App'x 938 (4th Cir. 2013). However, in the Amended Complaint, Fletcher asserts a claim that the alleged sexual assault and harassment constituted a violation of the right against cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. A sexual assault by a correctional officer on an inmate can violate the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000) (stating that a "sexual assault on an inmate by a guard . . . is deeply offensive to human dignity" and can violate the Eighth Amendment even in the absence of lasting physical injury); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (holding that "[b]ecause sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."). Although Fletcher does

not claim that Lowicki physically assaulted him, Defendants do not claim that an order to an inmate to insert his own finger into his rectum, if substantiated, would not constitute a form of sexual assault in violation of the Eighth Amendment. Nor do they claim that such an order issued during a strip search was justified by penological interests. Rather, Defendants generally claim that the record establishes that no such order was issued. Beyond the fact that the Court has determined that consideration of the record evidence on summary judgment is premature, the Court notes that even if it could consider the existing record, the verified complaint of Fletcher and the corroborating declaration of Marcelin would be sufficient to preclude summary judgment at this time. The Motion will be denied as to the sexual assault claim.

### C. Retaliation

As for Fletcher's claim that he was subjected to retaliation after he filed a PREA complaint against Lowicki, this claim asserts a violation of Fletcher's First Amendment right to be free from retaliation by a public official for the exercise of that right. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, Fletcher must show that (1) he engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and Defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.*

*Procunier*, 417 U.S. 817, 822 (1974). Specifically, the United States Court of Appeals for the Fourth Circuit has held that a prisoner's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

To state plausible claim of retaliation, a plaintiff must assert facts establishing that the defendant took an action that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500). A plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.*

Here, Fletcher has alleged that Lowicki retaliated against him for his PREA claim on April 5, 2018 by sending him back to his cell without dinner and by filing a Notice of Rule Violation against him that resulted in Fletcher's placement in lock-up and a loss of good time credits. Certainly, such disciplinary sanctions qualify as conduct sufficient to deter an inmate from filing a grievance. Although this incident occurred approximately six months after Fletcher's PREA complaint, his allegation that Lowicki explained his actions in April 2018 by stating, "You know the fuck why," which could be construed to be reference to the PREA complaint, is sufficient to support the causation element of a retaliation claim. The Court will therefore deny the Motion as to this claim.

## D. Supervisory Liability

Defendants further argue that Defendants Foxwell, Gallagher, and Roslak cannot be liable because they had no personal involvement in the alleged misconduct. It is firmly established that the doctrine of vicarious liability, or *respondeat superior*, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983); *cf. Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (holding that there is no *respondeat superior* liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 therefore must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, however, Fletcher has alleged that he informed Roslak of the sexual assault incident immediately after it occurred, but that no corrective action was taken. He also has alleged that he specifically complained to Gallagher about the retaliation against him in April 2018, but that Gallagher smiled and chuckled as he reported that the IID investigation had been resolved against Fletcher. On May 15, 2018, Fletcher wrote a letter to Gallagher about this incident. As for Warden

Foxwell, Fletcher filed Administrative Remedy Procedure grievances ("ARPs") about both the sexual assault incident and the alleged retaliation that were received and processed by the Warden's office. Viewing the allegations in the light most favorable to Fletcher, these Defendants arguably had knowledge of Lowicki's misconduct but failed to address it. Where relevant discovery has yet to be produced, the Court will not dismiss the claims against these Defendants at this time.

### E. Qualified Immunity

Although Defendants generally assert the defense of qualified immunity, they merely recite the legal standard and provide no factual or legal analysis to establish their entitlement to that defense in this case. In the absence of such substantive analysis, the Court will not consider the argument.

## III. Discovery

Where the Court will deny the Motion to Dismiss and has declined to consider summary judgment absent discovery, the Court will (1) permit Fletcher to file a Motion for Leave to Amend the Complaint, now that the pending Motion to Dismiss has been resolved; and (2) order the production of those items of discovery requested by Fletcher in his prior filings that the Court finds to be subject to discovery at this time. Defendants may not file another dispositive Motion until such discovery has been produced. This discovery will include: (1) all documents and video or audio recordings relating to the October 11, 2017 incident or April 5, 2018 incident, including but not limited to any recordings of calls by Fletcher to the PREA hotline relating to these incidents; (2) all prison policies and regulations relating to the requirement of strip searches before recreation and showers and the specific procedures to be followed during such strip searches; (3) all documents relating to any investigation of the October 11, 2017 incident by Lt. Jones, including

information that Jones "tried to file charges against Defendant Shawn Lowicki for sexual assault and harassment"; (4) all ARPs and appeals filed by Fletcher relating to either the October 11, 2017 or April 5, 2018 incidents; (5) the audio and video recordings of the hearing on Notice of Rule Violation No. 2018-006, Event IF No. 2018-0021744 dated April 13, 2018 at 12:32 p.m.; and (6) all documents relating to Correctional Officer Broyles' April 5, 2018 search of Fletcher's cell, breaking of Fletcher's CD player, and confiscation of his CD adapter, including but not limited to ARP No. ECI-074718 and IGO No. 2018-792.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion to Dismiss, will be DENIED. A separate Order shall issue.

Date: October 25, 2019

THEODORE D. CHUANG
United States District Judge